Our second case for this morning is Calumet River Fleeting, Inc. against International Union of Operating Engineers Local 150. And whenever you're ready, Ms. LaRose. Ms. LaRose. Good morning, Your Honors. May it please the Court, my name is Elizabeth LaRose, and I am one of the attorneys for Local 150 of the Operating Engineers AFL-CIO Appellants. Your Honors, in what follows, I will briefly summarize the facts of this case, I will explain why the District Court's decision failed to adhere to the 90-day limitations period associated with arbitration awards here, and why the decision fails to accord proper deference to the arbitrator's award as the law of this circuit requires, and finally, why the Norris LaGuardia Act should have been applied in this case. Before you get to that, could I ask you to explain the appellate jurisdiction here? Since I look in the docket and I don't see an injunction and I don't see a judgment. You don't see a judgment in here, Your Honor? I don't. I see an opinion. Yes. This memorandum, opinion, and order, Your Honor, resolved all issues in this case, and thus it was a final order. We ordinarily look for a separate judgment, right, under Rule 58, after a judge has issued an opinion, and particularly since, let me put it this way, you're challenging under the Norris LaGuardia Act the issuance of an injunction. Where's the injunction? Your Honor, the court in this opinion and order, or what is styled an opinion and order, that disposes of all claims in this case, the court grants summary judgment to Calumet River Fleeting on both counts one and two of its complaint, and those counts requested injunctive relief. And what relief, exactly? Let me put it this way. If you'd gone forward with the arbitration after this opinion and were charged with contempt, it would be, I think, a perfectly fair response to say, where's the injunction? What were we prohibited from doing? Your Honor, again, I think that the perception the parties, both parties, share. I understand the perception, but I'm, you're asking us to reverse a district court for issuing an injunction, contrary to the Norris LaGuardia Act, that I can't find. I understand, Your Honor. Just throw Rule 65 into the mix there. Yes, thank you. Because Rule 65 does, precisely for the contempt reasons that Judge Hamilton is talking about, say that you can't just refer to another document in an injunction. You've got to be quite clear about what conduct is prohibited or if it's an affirmative injunction, what do you have to go out and do, because if you don't do it, you can be thrown in prison or you can be fined. Your Honors, if this court's determination is that there isn't a judgment sufficient to maintain an injunction, the union would be perfectly comfortable with that. Well, there's neither a judgment nor an injunction. That's actually two rules of violations, not just one. I mean, there needs, we don't review opinions.  And so this implicates, among other things, appellate jurisdiction. It looks at this point like an advisory opinion. Understood, Your Honors. If permitted, I would like to supply the court with some supplemental authority on this question. Sure. That would be fine. We can go ahead and talk about the merits. Both sides can file that within 14 days of today's date and simultaneous filings on the question of this court's jurisdiction. Thank you, Your Honor. And in that filing, you might also take a look at Federal Rule of Appellate Procedure 4, which does address what happens when no Rule 58 final judgment is entered. Understood, Your Honor. Thank you very much. So the next thing I would like you to talk about is why you think the 90-day limitation period applies to a stranger to arbitration. If people are not formally made parties to an arbitration, why should they have to comply with the 90-day rule or anything else just because they happen to know about it? I don't think in this case, Your Honor, it's fair to characterize Calumet River Fleeting as a stranger to the arbitration. But it is, actually. It's not. You know, if you look at the arbitrator's award, the arbitrator is looking exclusively at a dispute between the union and Selvig. It's not. And, in fact, the arbitrator goes to some trouble to structure the award so as not to be ordering anybody else, including perhaps Calumet, to do anything. Your Honor, I think that the award actually indicates that Calumet River Fleeting and Selvig Marine are all egos of one another. And in the relief component, the arbitrator does require Calumet River Fleeting slash Selvig Marine to make the employees affected by the violations of the contract whole. But let me try to come at it a slightly different way. And that is, what would an appeal or a challenge to that arbitration award in 2012 by Calumet have looked like since Selvig complied with the award? What was there to appeal? The appeal would be from the arbitrator's determination that Calumet River Fleeting and Selvig Marine are alter egos. But why isn't that for purposes of the issue before the arbitrator? For that purpose, when Selvig tries to use Calumet's people or facilities to perform these three jobs, then Selvig can be told, no, this is actually you who did this, and so you've got to include the back pay and benefits or whatever the things were. But it doesn't actually require Calumet to do anything. Well, I'm going to, Your Honor. It doesn't say stop lending your people to Selvig. I understand, Your Honor. I understand your concerns. I think I'm going to refer the court back to the maxim in Rabine, which says that when an employer receives notice of an adverse decision in a federal labor arbitration, it must challenge that award within 90 days or, quote, expect to pay up, unquote. Yeah, and they were paid. It was paid, so there wasn't anything to appeal except for this potential kind of issue preclusion use of the award, right? This is, well, issue preclusion. Isn't that what you're doing here? Well, no, Your Honor. I mean, I think we are matching the findings in the award with an existing body of law about the relationship between alter egos. Well, what you're trying to do is use, I think, the issue, the factual, mixed legal factual issue that you prevailed on in the 2012 arbitration and say, in essence, forevermore, or at least for another couple of years, we get to treat these two companies as alter egos for any other purpose as well, right? Your Honor, I think what is significant about that alter ego finding is that the companies were alter egos at the time that Selvig Marine signed the collective bargaining agreement with Local 150. But wait a minute. I take issue with your, I guess, your denial that you are really using this as issue preclusion because we now have a completely different dispute. We have this man who, you know, you want to take his case to arbitration. And I'm looking at footnote one in the district court's opinion where she says, the union does not claim that there is any other basis apart from the arbitrator's conclusion for a finding that Calumet and Selvig Marine are alter egos, nor does it ask this court to make an independent finding. Well, I thought that was strange in light of the normal rule that it's the court that decides is there an arbitration agreement, who's in, who's out. It would have seemed to me the most natural thing in the world, at least as backup, for you to say to the court, and besides, the arbitrator relied on lots of evidence, whatever, whatever. We think you should find them alter egos. Your Honor, we had already gotten a determination from an arbitrator finding these individuals to be, finding these two companies to be alter egos. Right, but you knew they were contesting that they were bound by that determination. It's very common in litigation that issues determined in suit A between X and Y might have an impact on suit B between X and Z, and people need to protect their positions if that's the case. And Z wasn't bound by what went on in the X versus Y case, unless they really control. I mean, there are a few things that you could prove, but the court needs to decide that in the second case. I think the response to your question is this, there is no point in presenting alter ego facts to an arbitrator if we just simply have to turn around and re-litigate that issue in front of the jury. There is. You've got the three incidents covered. Yeah, and they're both liable. I mean, I have no doubt that Calumet would have been required to pay on the 2012 arbitration if Selvig had not. That's Ray Bean, right? But this was limited to only that retrospective relief, no prospective relief, and all the hedges that the arbitrator put in the award. Could I shift a little bit to the Norris-LaGuardia Act issues here? Sure, you're welcome. Do you think that Norris-LaGuardia can be avoided by having a district judge issue only a declaratory judgment and stopping short of an injunction? If the declaratory judgment is that the district court finds that the case is inarbitrable or arbitrable, yes, I do think that, Your Honor. That a district judge can do that? I do think a district court can do that, yes. Okay. And that's what you – is it correct that that's basically what you agreed to let the district court do here by agreeing to postpone the arbitration until this was decided? Yes, Your Honor. We agreed to defer the arbitration, to postpone the arbitration, awaiting the court the outcome in this case. Okay. By the way, where is Mr. Zuccolo in this kind of circular firing squad between the engineers and the longshoremen? Your Honor, he is hoping to get his day in court, so to speak, with an arbitration with Calumet River Fleeting regarding his district. Why didn't he go to the longshoremen? Aren't they the representatives? I don't think that's covered in the record here, Your Honor, if you'd like me to answer the question. I would. Anyways, I'm happy to do that. As I recall, Your Honor, and this is going out some years, Mr. Zuccolo may have asked the longshoremen to file a grievance for him and they refused. Okay. Okay. If you'd like to save the rest of your time for rebuttal, you may do that, or if you want to leave us with one more thought, you can do that. Okay. I'd like to leave you with one more thought, Your Honor. Your question about, you know, why didn't we ask the district court to redetermine alter ego or to confirm somehow, put its imprimatur on the arbitrator's award, and I think Or to decide it in a forum where Calumet had the opportunity to make its own presentation. And I think our response, Your Honor, as you can probably ascertain from the briefs, is that they had such a forum when we arbitrated this case, and that it is, it underserves the interests of judicial economy and all of the policies that surround labor arbitration to require the parties to litigate alter ego in front of the arbitrator, only to have the district court disregard that entire set of determinations, including the component findings that give rise to alter ego, and have to litigate it again before the district court. Suppose this issue came up five years from now. Could you still rely on that 2012 finding? Only to the extent that it stands for the, that it helps to establish that Calumet River Fleeting is bound to a collective bargaining agreement with Local 150. That is the only reason we are relying on it here, Your Honor. But you could rely on it in 2021? Well, a lot could happen. I mean, Calumet River Fleeting could try to terminate its agreement with Local 150. It's done that before, and if that happens, if it, provided it's done correctly, the union might be required to observe that. Okay. Thank you very much, Your Honors. Thank you. Mr. Warner. Thank you, Your Honors. May it please the court, as an initial matter, I'd like to apologize for not raising and flagging the significant jurisdictional issues that you raised at the outset, and would appreciate an opportunity to brief that. Could you explain to me your theory of subject matter jurisdiction? It seemed to be based on the counterclaims filed by the union. Basically, the court has jurisdiction under Section 301 to hear our action for declaratory judgment, which is just the mirror image of the counterclaim to compel arbitration. Your jurisdictional statement, however, I noticed that too, refers only to the counterclaims, and declaratory judgments are complex enough. It would have been far preferable for the court for you to have bitten the bullet and talked about the declaratory judgment. I think you're right, but it's an odd way to put it. Your Honor, I apologize, and I do recall actually struggling over the jurisdictional statement, and we ended up leaving out the reference to declaratory judgment act after realizing that the declaratory judgment act, in and of itself, is not a basis for this court's jurisdiction. Now, you're exactly correct. It would have been clearer to say that jurisdiction lies under Section 301 because this is a declaratory judgment action to determine the rights under collective arbitration. I would say in this court, shorter is almost never better than longer when it comes to jurisdiction. At least if it's not simple. Correctly, so I apologize for that, Your Honor, but the basis is it is a declaratory judgment under Section 301. Can you tell us when Selwick closed or dissolved? It's unclear from the record. Isn't the exact date rather important, given the 2012 arbitration date? It's not important at all in that by the time the Zuccolo grievance arose, it's undisputed that Selwick closed. Okay, under your theory, it's not relevant, but under other theories, it would seem highly relevant to me. Namely, whether it's their alter egos at the time of the June 2012 arbitration award. Your Honor, even if Selwick was fully operational, the union would have no basis under the original arbitration award against Selwick to apply that to Calumet. I understand you want to argue about that. I just don't understand why this rather basic fact under your control is not in this record and not clear. Yeah, I thought it was important as well and spent some time searching through the record for it. And I would like you to explain why Rabin doesn't indicate that you, who were right there on the edge of the arbitration, arguably controlling even everything that Selwick did, are not bound by the arbitration. Your view seems to be only if you had formally somehow been named a party to the arbitration, which I assume you would have resisted because you would have said that you weren't a party to the collective, this Great Lakes floating agreement. So the arbitrator does find, paragraph one, you're an alter ego. That has implications that go far beyond these three incidents. Your Honor, if you look at the arbitration award, that finding doesn't have any implications beyond the dispute. Well, sure it does. Do you think arbitrators are just wasting ink? The arbitrator says... No, Your Honor, that finding was critical to the arbitrator's determination that grievance, that for purposes of a limited dispute. Appendix two, page 27 of the blue brief, Selwick Marine Construction and Calumet River Fleeting are alter egos of one another. And then you get to paragraph four and your name shows up again. Selwick Marine Construction slash Calumet River Fleeting shall make whole SMC slash CRF employees, etc. So I don't think you need to be a genius to think that you're involved in this. Involved doesn't mean the same as being bound by the award. Would you agree that you were bound by the award with respect to the retrospective relief? That if Selwick hadn't paid, they could go after Calumet for it? That's what Rabin says, right? I would not agree with that, but I would agree in that case, if it was an issue of enforcing this exact arbitration award against Calumet River Fleeting, I would concede that Calumet River Fleeting might have been bound by the 90-day limitations period and would have had to have challenged that within 90 days. But again, as the honors pointed out, we don't have that issue because Selwick complied with the award. And this case is not about enforcing this award against either Selwick or Calumet. But why isn't that logically inconsistent with your position that you are just as much a stranger as Boeing is to this award? That just has nothing to do with you. You don't have to comply with anything. You don't have to, even though you're an alter ego, somehow you don't need to withdraw again from the Great Lakes Floating Agreement. I don't see how you're half in and half out. Your Honor, it's based on a bedrock principle of arbitration. A party can only be bound by an arbitration decision if it has agreed to arbitrate disputes. That's absolutely true. And the issue here is not whether that's a good proposition of law, because it surely is. The issue is, who is the party? Is the party just the separate entity Selwick Marine? Or is the party this combined mess of an organization that sometimes calls itself Selwick Marine and sometimes calls itself Calumet River Fleeting? So who goes inside that bracket? And all of these alter ego cases that we get in union, sometimes it's organization cases, it comes up in different contexts, all concern how many people are in that bundle of the party. Correct. The issue here is- You say somehow you're not in the bundle, but that's the issue. We are not in the bundle. And the fact that an arbitrator said, even for limited purposes, that we were, cannot possibly be binding on Calumet. Because that decision, whether a party- Go ahead, Your Honor. Then I don't see why you didn't respond to Judge Hamilton by saying, we didn't even have to pay any money pursuant to paragraph four. Because if you're really that much of a stranger and you want a relitigation of the question whether you are liable to pay for those three incidents, then that makes you a real stranger. You seem to be arguing for a hybrid. And to be clear, under the Rubin case, and I will concede that there is an argument to be made that I won't concede Calumet would be bound. But if there was an effort to enforce this award against Rubin, against Calumet, Calumet, it would have been closer call that they would have had to raise their defense and raise the challenge to alter ego finding earlier. But in no way conceding the correctness of the alter ego, of the arbitrator's decision. And even more important, in no way am I conceding that the arbitrator had authority to make that decision in a way that would bind Calumet. As Your Honor's pointed out in earlier questioning, ultimately, that decision, whether these parties were alter egos, such that Calumet itself is bound by collective bargaining agreement, that is for the court to decide. And an arbitrator could not make that decision in a way that bound Calumet. Counsel, if I could ask you about the Norris LaGuardia issues. One of the things that troubles me, if we have appellate jurisdiction here, again, I don't see an injunction, which would help indicate that the Norris LaGuardia was not violated yet anyway. But I would think that having a district judge issue a declaratory judgment to the effect that, but for Norris LaGuardia, I would issue an injunction, is a pretty good way of evading the whole act. Yes, and I'm aware of this court's precedent in district court opinions discussing that dilemma, and I believe it's an unresolved issue. But it is easily resolved in this case for this reason. The AT&T broadband case that the union relies upon as this circuit's authority for holding that a pre-arbitration injunction seeking to stop an arbitration is barred by the Norris LaGuardia Act. AT&T broadband is a different dispute because in that case, there was undoubtedly a labor dispute at issue within the meaning of the Norris LaGuardia Act in that the parties, the union and the employer, had an existing bargaining relationship. They had collective bargaining agreements, and the issue in that case was whether the dispute was covered by a collective bargaining agreement that existed. Here, the district court found, in essence, there is no labor dispute here because there was no collective bargaining agreement, no bargaining relationship. So explain to me again why we have subject matter jurisdiction? Excuse me? Explain to me then why we have subject matter jurisdiction. Because the complaint on this case... Under 301? Correct. Right. This sure looks like a labor dispute to me. It was framed as a labor dispute by the union. So you must... I'm going to bail you out, okay? You have to be arguing that it was alleged to be a labor dispute, and the issue before the court is whether it was a labor dispute. Your position was that it wasn't, but just because you're defending something doesn't destroy subject matter jurisdiction. Exactly right. Exactly right. Thank you, Your Honor. And now, given that the district court has definitively held there is no collective bargaining relationship, the NLRB has held that LOCA 150 has no representational status over Calumet's employees, the labor dispute allegation drops out of the case. So you think that an injunction could be issued? At this point, yes. Okay. Then let me just ask, suppose I disagree with you about that. Then the question, let's go back to my original question, which is, if the Norris-LaGuardia Act applies, can you avoid that application by simply asking the district judge to issue a declaratory judgment? I believe you can, and I think that's an absolute necessity to reconcile AT&T Broadband and the act with the Supreme Court's decisions in AT&T Technologies and John Wiley and Sons, because how else can a court reserve it? It can wait until there's an attempt to enforce an arbitration award that's issued in absentia. I mean, Norris-LaGuardia is very odd. It is. But for very good historical reasons, right? And it puts you and your client on the spot in having to make a tough decision about whether to participate in an arbitration that you don't think you're subject to. And in this case, procedurally, we have a very odd dilemma because, in essence, that's what the union attempted to do. Okay. Well, I would have thought that your better escape from my line of questions is to say that the union agreed to this procedure. Correct. That we don't need to decide the broader statutory issue. Certainly, for purposes of AT&T Broadband, they agreed to defer arbitration pending a judicial resolution. And in terms of now, there's nothing, given that the court has definitively and finally decided that there was no collective bargaining relationship and no labor dispute, there's nothing that would prevent either a declaratory judgment or an injunction. Unless we were to disagree with the district court. I'm sorry. Unless we were to disagree with the district court. That is correct. But just in closing, bottom line, the arbitration award itself makes it clear that it was retrospective only. It only applied to the disputes that were before the arbitrator. In fact, the arbitrator specifically says, I am without authority to issue a prospective remedy. In this case, the union blatantly tries to give this award prospective effect against Calumet River Fleeting that was not a party to a collective bargaining agreement with Local 150 and not a party to underlying arbitration. For that reason, the district court's judgment should be affirmed. Just before you sit down on this final issue of the propriety of injunctive relief, isn't there precedent for finding that a dispute between a company and a stranger union is a labor dispute for purposes of Norris LaGuardia? There is precedent for that. And however. So regardless of how the merits come out. Although I don't believe it's on point with our case where you have a judicial determination. Initially, if there's a colorful claim of a potential dispute there, Norris LaGuardia would bar the injunction. But here where there's been a final determination on the merits by the district court as to the relationship between the parties, I would argue that that takes it out of the Norris LaGuardia Act. Thank you, Your Honor. Okay, thank you very much. Anything further, Ms. LaRose? Your Honor, I think a point that was not addressed by Calumet River Fleeting nor by myself is to emphasize that these parties agreed to submit the question of alter ego to this arbitrator. That is Selvig Marine, which is the alter ego of Calumet River Fleeting, argued the alter ego issue in front of the arbitrator. That, coupled with a broad arbitration clause, suggests that the parties agreed to submit this question, which the court today occasionally characterized as arbitrability, to the arbitrator. Where that occurs, the arbitrator is entitled to decide that question. I also think that one thing that may have been overlooked is that the whole concept of final and binding, which this contract requires arbitration decisions to be, suggests some kind of prospective application. If it were not final, there would be no need to say final and binding if we weren't expecting to rely on this decision at some point in the future. Another thing, Your Honors, this question about whether this is a labor dispute, I think the language of the statute itself indicates that in these circumstances, this is in fact a labor dispute, even where you could characterize it, and I don't think you fairly can, as a dispute between two unions. What happened here is that Calumet River Fleeting conferred recognition on the ILA, on the heels of the longshoremen, that is, on the heels of this adverse arbitration decision. I believe that they did so as a device to try to thwart the arbitration decision in Local 150's contract. Okay. Thank you very much, Ms. LaRose. Thank you. Thanks to both counsel. We'll take the case under advisement.